### 77403. TAYLOR v. THE STATE.
(378 SE2d 335)

BIRDSONG, Judge.

Appellant Gregory Alan Taylor was found guilty of driving under the influence of alcohol in violation of OCGA § 40-6-391 (a) (1). He enumerates as error on appeal the trial judge's refusal to instruct the jury as to accident and misfortune. OCGA § 16-2-2. The trial court did instruct the jury it might acquit Taylor if his intoxication was found to be involuntary.

For purposes of this appeal we shall accept and rely upon the appellant's statement of facts in brief: Appellant Taylor is a civil engineer employed by Georgia Power Company. On Saturday, July 18, 1987, Taylor was to oversee the inspection of paint applied on the interior of three new oil storage tanks in Forest Park. The tanks are cylindrical, measuring 55 feet high and 18 feet in diameter. Each tank has only two small openings: one at the bottom of the tank and one at the top. The tanks had been painted during the two preceding days. The painters had worn complete protective suits, including closed helmets with attached hose through which fresh air was continuously pumped.

In all, Taylor spent approximately six hours in the tanks. At no time did he wear a protective mask or helmet. At no time during those six hours did he realize that he was inhaling alcohol and xylene, though he did notice the presence of fumes in the tanks and felt a headache developing. Taylor left work around 4:30 p.m. He drove directly to the home of friends in Marietta. He and three friends then drove to a package store and purchased two twelve-packs of light beer. Taylor and a male friend drank from one twelve-pack, while Taylor's date shared the remaining twelve-pack with a female companion. The four drank as they traveled to Athens, Georgia, to attend a party. Around 7:30 or 7:45 p.m., the group stopped at a restaurant, where Taylor had two more beers. Around 9:30 p.m., they drove to a friend's home in Athens. Appellant consumed one more beer. He and the other man slept for about one and one-half hours; when Taylor awoke, his date asked him to accompany her to a doughnut shop. She persuaded Taylor to drive, for she was not feeling well. This was the first time Taylor had driven all evening.

A police officer came to the doughnut shop in response to calls regarding a woman "passed out" in the vehicle. Taylor's date, Ms. Rogers, testified that she was only sleeping because she did not feel well. The police officer, based solely on the smell of alcohol about Taylor and his date, advised both to refrain from driving the vehicle for a period of time. No time limit was set by the officer. The officer advised fellow police officers by radio, to be on the lookout (B.O.L.O.) for appellant's vehicle. Taylor and Ms. Rogers waited up to an hour, which they felt sufficient to comply with the officer's request and to allow any effects from the alcohol to wear off. Within a mile of driving down the road they were stopped on the basis of the B.O.L.O. Taylor was arrested after being administered field sobriety tests. He was transported to police headquarters. A blood alcohol test, utilizing the Intoximeter 3000, was administered; Taylor's blood alcohol level registered .13 percent by weight.

At trial, the manufacturer's specifications for the epoxy used to paint the tanks were admitted into evidence. Dr. Thomas Lance, an

expert in the industrial chemistry field, testified as to the chemical composition of the paint involved; the process of drying and evaporation of the paint; the presence of fumes in the tanks; the absorption of alcohol and xylene fumes through the lungs by a person working in such an environment; the maximum allowable concentration of alcohol in the air in a work environment, as defined by OSHA; and as to the probable concentration of alcohol in the air in these tanks two days after being painted.

The expert testified that xylene, an aromatic solvent present in the paint, evaporates and is absorbed into the body like alcohol fumes. The fact that both alcohol and xylene have strong absorptions at 3.39 microns, and that this wave length is the one which the Intoximeter 3000 tests for, points to the possibility that xylene fumes present in appellant's blood could have registered as alcohol.

The expert calculated that the concentration of alcohol in the air trapped in the tanks, as a result of evaporation over a period of two days as the paint dried, would be approximately 59,000 milligrams per cubic meter, versus the OSHA standard maximum of 1,900 milligrams per cubic meter. In Dr. Lance's opinion, appellant would have absorbed a significant amount of alcohol into his system and any ventilation in the absence of positive pressure from a fan would not be significant.

Thus, appellant concluded the concentration of alcohol in the tanks was substantially higher than the OSHA limits. Appellant's absorption of this combined with the alcohol from seven beers consumed over five to six hours to raise his blood alcohol level above the legal limit. In other words, when appellant began to consume seven beers over five to six hours, his blood alcohol content was not zero, but, unknown to him, was already elevated. *Held*:

Appellant cites *Sapp v. State*, 179 Ga. App. 614 (347 SE2d 354) and *Taylor v. State*, 164 Ga. App. 660 (297 SE2d 755) to prove the charge of accident or misfortune was required in this case. The charge was perhaps authorized in this case, but the failure to give it was not error which will reverse the verdict of the jury.

We have examined this matter from every angle. We fail to see, however, how the jury could have found his intoxication at the time of his arrest to be the result of accident or misfortune, when under proper charge it found his intoxication to be *not involuntary*.

The bottom question is whether a person, though not acting involuntarily, might still be acting from accident or misfortune. Obviously, he may. But in the peculiar case of a conviction for intoxication by alcohol, the jury's finding that appellant was not under the influence of involuntary intoxication is a finding that he was under the influence of *voluntary* intoxication. Accepting this as fact, there can be no logical conclusion that his *voluntary* intoxication was the result

of accident or misfortune as defined by OCGA § 16-2-2.

We see no other way to view the situation. If it be suggested that while his *over*-intoxication was voluntary, its unsuspected genesis was accidental, nevertheless, it was not this accidental intoxication arising from the inhalation of paint fumes earlier in the day, which the jury viewed and found to be the *voluntary* criminal act: driving under the (voluntary) influence of alcohol. The evidence of the alcohol appellant voluntarily ingested after any he may have accidentally inhaled was evidently deemed by the jury to be a crime.

The evidence was sufficient to enable a rational juror to find appellant guilty of driving under the influence of alcohol beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JANUARY 11, 1989 —
REHEARING DENIED JANUARY 30, 1989 — 

*John W. Timmons, Jr.*, for appellant.
*Ken Stula, Solicitor*, for appellee.